# United States Court of Appeals
## For the First Circuit

No. 13-1767

XUE SU WANG,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya and Lipez,

Circuit Judges.

Jeffrey E. Baron and Baron & Shelkin, P.C. on brief for petitioner.

Stuart F. Delery, Assistant Attorney General, Shelley R. Goad, Assistant Director, and Carmel A. Morgan, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

April 30, 2014

**SELYA, Circuit Judge.** Although a familiar bit of homespun philosophy tells us that hope springs eternal, litigation founded on hope alone, unsupported by persuasive legal or factual arguments, should not be allowed to persist eternally. Such is the lesson of this case.

Petitioner Xue Su Wang, a Chinese national, seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his motion to reopen removal proceedings. The petitioner's case began nearly two decades ago, but the relevant facts are susceptible to succinct summarization.

The petitioner entered the United States without inspection in 1993. On November 28, 1994, he filed an application for asylum. Within a matter of months, federal authorities served him with a show-cause order charging removability. See 8 U.S.C. § 1227(a)(1)(B) (formerly 8 U.S.C. § 1251(a)(1)(B)).

A removal hearing, structured to consider both the government's charge and the petitioner's cross-application for asylum, was scheduled for August 16, 1995, at the immigration court in Boston. The petitioner failed to appear, and the immigration judge (IJ) entered an order of deportation in absentia.

Nothing of consequence happened until November 12, 1998, when the petitioner moved to reopen the proceedings. He conceded that he had known of the scheduled show-cause hearing, but said that he did not appear because an immigration consultant whom he

had hired advised him that the proceedings would be transferred to New York.  He also complained that he never received the in absentia deportation order because it had been mailed to his old Boston address.  He admitted, though, that he knew by January of 1996 that there were problems with his asylum claim because his consultant had informed him that the claim had been "cancelled" and he could do nothing further to pursue it.

The IJ recognized that special time-bar rules apply to motions to reopen following in absentia deportation orders.  See 8 C.F.R. § 1003.23(b)(4)(iii)(A).  Nevertheless, the IJ denied the petitioner's motion as untimely.  The IJ explained that the petitioner's motion was filed significantly beyond the 180-day deadline for such motions and that the petitioner had waited too long to seek reopening after learning the actual status of his application.  The petitioner appealed to the BIA.  By order dated November 15, 2000, the BIA affirmed without opinion the IJ's refusal to reopen the proceedings.  The petitioner chose not to seek judicial review of this order.

We fast-forward to February 12, 2009 (more than eight years later).  On that date, the petitioner filed a second motion to reopen — this time, directly with the BIA — in which he argued that his case should be reopened because of changed country conditions.  See id. § 1003.2(c)(3)(ii).  Alternatively, he argued for relief due to ineffective assistance of counsel.  Unimpressed,

-3-

the BIA denied the second motion to reopen, concluding that neither of the petitioner's asserted grounds had merit. The petitioner sought judicial review and this court held that the BIA had not abused its discretion. See Wang v. Holder, No. 09-2535 (1st Cir. May 7, 2010) (unpublished judgment).

Almost three more years elapsed before the petitioner — on February 27, 2013 — filed yet a third motion to reopen. This motion (also lodged directly with the BIA) argued that reopening was warranted because (i) the petitioner had not received notice of the original deportation order, (ii) the filing period never commenced due to this lack of notice, and (iii) he deserved the benefit of equitable tolling. The BIA concluded that no plausible justification existed for relieving the petitioner from the 180-day period for motions to reopen in absentia removal proceedings. Accordingly, it denied the motion as untimely. See 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1). This petition for judicial review followed.

"Motions to reopen removal proceedings are disfavored as contrary to the compelling public interests in finality and the expeditious processing of proceedings." Fustaquio do Nascimento v. Mukasey, 549 F.3d 12, 15 (1st Cir. 2008) (internal quotation marks omitted). We review the BIA's denial of a motion to reopen only for abuse of discretion. See Kucana v. Holder, 558 U.S. 233, 242 (2010). Under this deferential standard, the movant must "show

-4-

that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

Motions to reopen immigration proceedings are generally subject to time and number bars. In the ordinary case, a party may file only one motion to reopen, and that motion must be filed within 90 days of the date of entry of the final administrative order. 8 C.F.R. § 1003.23(b)(1).

We deal here, as did the agency, principally with the time bar.[1] A separate temporal framework applies to motions to reopen in absentia removal orders. In such a case, an alien who demonstrates that his failure to appear was due to exceptional circumstances beyond his control may move to reopen within 180 days of the date of the deportation order. Id. § 1003.23(b)(4)(iii)(A)(1). If the alien can demonstrate that he did not receive notice of the hearing or was unable to attend because he was in custody and his failure to appear was without fault on his part, a motion to reopen may be filed at any time. Id. § 1003.23(b)(4)(iii)(A)(2).

_____

[1] The applicable regulation states that, under certain circumstances, the normal time and number bars do not apply to motions to reopen in absentia removal proceedings. See 8 C.F.R. § 1003.23(b)(4)(iii)(D). But the regulation is not explicit as to how the number bar is altered. Because this case turns on the time bar, we do not explore this question.

Here, the BIA noted the petitioner's concession that he received the show-cause order, which listed the time and date of the deportation hearing. This concession alone renders him ineligible to take advantage of the no-time-limit largesse of 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2). And even though we have not yet decided whether equitable tolling can suspend the time limits applicable to motions to reopen, see Charuc v. Holder, 737 F.3d 113, 115 n.2 (1st Cir. 2013), the petitioner's call for tolling is manifestly unavailing.

For equitable tolling to apply, a party must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (per curiam) (internal quotation mark omitted). In this instance, the BIA found tolling unwarranted because the petitioner had not shown that he exercised due diligence during the nearly two decades since his removal was first ordered. This finding is rock-solid: the protracted delays throughout the period from 1995 to 2013, coupled with the petitioner's many missed opportunities to rectify the situation, foreclose any holding that the BIA exercised its judgment arbitrarily, capriciously, or irrationally. See, e.g., Bead v. Holder, 703 F.3d 591, 595 (1st Cir. 2013).

The bottom line is that nothing in the petitioner's latest motion to reopen affects our previous conclusion that

"petitioner has not demonstrated the due diligence that would permit our consideration of equitable tolling." Wang v. Holder, No. 09-2535 (1st Cir. May 7, 2010) (unpublished judgment). The petitioner obviously was aware by the time that he filed his first motion to reopen that he had been ordered deported in absentia and he could have argued in that motion that the 180-day deadline was inapplicable because the IJ had not given him proper notice of that order. His failure to make such an argument then and there is the antithesis of due diligence.

This time around, the petitioner has not raised any ground for relief that he could not have raised in the course of litigating his earlier motions. Nor has he given us any plausible reason to find that he is entitled to a third bite at the cherry. Sooner or later, there must be an end to all things (including attempts to thwart removal). We have reached that point. See Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir. 2007) (explaining that "an alien ought not to be allowed to frustrate [a] removal order by filing an endless series of motions").

We need go no further. We conclude, without serious question, that the BIA acted within its discretion in finding that the petitioner's third motion to reopen was untimely. Thus, we deny the petition for judicial review.

**So Ordered.**

-7-