# United States Court of Appeals
## For the First Circuit

Nos. 13-1893
     14-1285

MENG HUA WAN,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITIONS FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya and Howard,
Circuit Judges.

Wei Jia and Law Office of Wei Jia on brief for petitioner.
     Stuart F. Delery, Assistant Attorney General, Civil Division,
Kelly Walls, Senior Litigation Counsel, and Anna Nelson, Trial
Attorney, Office of Immigration Litigation, on brief for
respondent.

January 20, 2015

**SELYA, Circuit Judge.** Petitioner Meng Hua Wan, a Chinese national, seeks judicial review of an order of the Board of Immigration Appeals (BIA) affirming a decision of an immigration judge (IJ) refusing to reopen removal proceedings after the petitioner was ordered removed in absentia. Concluding, as we do, that the agency did not abuse its considerable discretion, we deny relief.

The material facts are easily summarized. The petitioner entered the United States in June of 1997 on a visitor's visa that expired six months later. He overstayed and accepted employment without proper authorization. Approximately three years later, federal authorities instituted removal proceedings. See 8 U.S.C. § 1227(a)(1)(B), (a)(1)(C)(i) (formerly § 237(a)(1)(B), (a)(1)(C)(i)).

At that time, the petitioner gave the Immigration and Naturalization Service (INS) a mailing address — "80 Farrington St #3, Quincy, MA 02117" — that contained an inaccurate zip code. The petitioner was served personally with, and signed for, a notice to appear (NTA) that left open the date of appearance. The NTA reflected the incorrect zip code that the petitioner had provided but warned the petitioner that he was required to report any change in his current mailing address to the INS; that notices of hearings would be mailed to that address; and that failure to attend a hearing could result in an in absentia order of removal. Despite

these warnings, the petitioner never advised the INS about the inaccurate zip code.

In due course, the immigration court scheduled a removal hearing for March 20, 2001, and sent notice to the petitioner at his mailing address, using the correct zip code (02170). The hearing notice warned once again that if the petitioner's address was incorrectly listed on the NTA, he must furnish the immigration court with the correct address within five days. See 8 C.F.R. § 1003.15(d)(1). It further cautioned that hearing notices would be sent to the most recent address provided by the petitioner and would be deemed sufficient notice for future proceedings. The petitioner concedes that he received this hearing notice. Once again, the petitioner made no effort to correct the zip code listed on the NTA.

The petitioner did not show up for the scheduled hearing. The IJ gave the petitioner a second bite at the apple: she continued the hearing to May 1, 2001, and made sure that a notice of the new hearing date was sent to the petitioner. This notice was mailed to the address listed on the NTA.

When the petitioner again failed to appear, the IJ entered an order of removal in absentia. A copy of the removal order and instructions for filing a motion to reopen were mailed to the petitioner using the correct "02170" zip code.

Some eleven years later, the petitioner became embroiled in criminal proceedings involving a false green card. This contretemps brought his immigration status to the fore and, in January of 2013, he moved to reopen his removal proceedings. The petitioner conceded that he had received notice of the March 20 hearing, but blamed his failure to appear on ineffective assistance of counsel. He explained that, upon receiving the initial hearing notice, he retained a California attorney named Chen who assured him that he (Chen) would "settle" the problem. Chen supposedly advised the petitioner that he need not attend the hearing. The petitioner never heard from Chen again, and his efforts to contact Chen proved unavailing.

The IJ denied the motion to reopen as untimely. She noted that notice of both the removal proceedings and the entry of the removal order was properly served by mail at the correct address, but the petitioner nevertheless dallied more than eleven years before seeking to reopen the matter. The IJ also declined to order reopening sua sponte, finding that the petitioner had neither exhibited diligent efforts nor set forth sufficient detail to make out a colorable claim for withholding of removal.

The petitioner unsuccessfully appealed to the BIA. His attempt to secure judicial review was interrupted by the government's unopposed motion to remand the case to the BIA for consideration of whether the petitioner qualified for relief based

on changed circumstances in his homeland. See 8 C.F.R. § 1003.23(b)(4)(i). We granted the government's motion (albeit retaining jurisdiction). On remand, the BIA concluded that the petitioner had failed to present evidence demonstrating a material change in China's country conditions since he was ordered removed in 2001. Rather, the only changes were in the petitioner's personal circumstances in the United States, and such changes are not a valid basis for an exception to the temporal limitation for filing a motion to reopen. See Ming Chen v. Holder, 722 F.3d 63, 66 (1st Cir. 2013). A new petition for judicial review followed.[1]

In the immigration context, this court ordinarily reviews the decision of the BIA rather than that of the IJ. See Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). To the extent that the BIA adopts portions of the IJ's findings while adding its own gloss, however, we treat the two decisions as a unit. See id. We review denials of motions to reopen solely for abuse of discretion. See INS v. Doherty, 502 U.S. 314, 323 (1992); Xue Su Wang v. Holder, 750 F.3d 87, 89 (1st Cir. 2014). The agency's resolution of such a motion will stand unless that resolution rests on a material error of law or a manifestly arbitrary exercise of judgment. See Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005).

---

[1] We have consolidated this petition with the original petition for judicial review. For present purposes, we need not distinguish between the two petitions.

-5-

Motions to reopen removal proceedings are disfavored because such motions are "contrary to the compelling public interests in finality and the expeditious processing of proceedings." Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007) (internal quotation marks omitted). Such motions are generally limited both numerically and temporally. A party ordinarily may file only one motion to reopen, and that motion must be filed within 90 days of the date of entry of the final administrative order. See 8 C.F.R. § 1003.23(b)(1).

To be sure, this strict regime admits of certain narrowly circumscribed exceptions. Pertinently, an in absentia order of removal may be reopened if the alien can show either that he did not receive proper notice of the removal proceedings or that his failure to appear was due to exceptional circumstances beyond his control. See 8 C.F.R. § 1003.23(b)(4)(iii)(A); Kozak v. Gonzáles, 502 F.3d 34, 35 (1st Cir. 2007). There is a further exception that comes into play when a petitioner can show materially changed country conditions. See 8 C.F.R. § 1003.23(b)(4)(i). When a motion to reopen is based on lack of proper notice or changed country circumstances, it may be filed at any time. See id. § 1003.23(b)(4)(i), (b)(4)(iii)(A)(2). However, when a motion to reopen is based on exceptional circumstances, it must be proffered within 180 days of the entry of the removal order. See id. § 1003.23(b)(4)(iii)(A)(1).

-6-

In his first petition for review, the petitioner arguably alleged that changed country conditions warranted an extension of the filing deadline for motions to reopen. In his second petition for review, the petitioner alleged that he did not have proper notice of his removal hearing, that the IJ abused her discretion in failing to apply equitable tolling, and that the BIA engaged in impermissible factfinding. Before tackling any of these arguments, though, we must confront a threshold barrier: the government's contention that this court lacks jurisdiction over the last three claims of error because the petitioner did not raise them below and, thus, did not exhaust his administrative remedies.

We start with a brief reprise of the exhaustion requirement. For this court to have jurisdiction to review a final order of removal, the alien must have "exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The purpose of this requirement is to prevent the courts from usurping the agency's functions and to "allow[] the agency the first opportunity to correct its own bevues." Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013).

Our exercise of jurisdiction over the first two contested claims of error — lack of notice and equitable tolling — appears to be appropriate. Whether or not raised by the petitioner, the BIA addressed the notice issue. Similarly, it concluded that the petitioner failed to show due diligence — a prerequisite to the

application of the equitable tolling doctrine. See Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010). The exhaustion requirement is satisfied where, as here, the agency chooses to address the merits of a particular issue, regardless of whether the alien raised that issue. See Mazariegos-Paiz, 734 F.3d at 63.

While we have jurisdiction to review these two claims of error, the same does not hold true for the petitioner's claim that the BIA engaged in impermissible factfinding. This claim is directed to the BIA's actions rather than to anything that happened before the IJ, so it could only have been raised below through the filing of a motion for reconsideration.

This court has not yet had occasion to decide whether a claim asserting that the BIA engaged in impermissible factfinding must be raised on a motion for reconsideration in order to satisfy the exhaustion requirement. The time has come for us to grapple with this question.

In our view, we lack jurisdiction to hear and determine the petitioner's claim that the BIA engaged in impermissible factfinding. That claim has never been heard by the BIA, and the core purpose of the exhaustion requirement is frustrated when, as in this instance, the BIA's decision gives rise to a new issue and the alien fails to use an available and effective procedure for bringing the issue to the agency's attention.

-8-

In reaching this conclusion, we do not write on a pristine page. The Fifth Circuit has held such a claim to be unexhausted, reasoning that a motion for reconsideration "is an available and adequate mechanism for the petitioner to argue, and the BIA to correct, any errors that arise in a BIA decision." Omari v. Holder, 562 F.3d 314, 320 (5th Cir. 2009). The Tenth Circuit has sized up the situation the same way. See Sidabutar v. Gonzales, 503 F.3d 1116, 1122 (10th Cir. 2007). We join these courts and hold that when an alien complains of impermissible factfinding by the BIA, that claim is unexhausted unless and until the alien files a timely motion asking the BIA to reconsider its actions. Consequently, we lack jurisdiction to entertain the petitioner's claim of factfinding error.

We now turn to the merits of the claims that come within our jurisdictional ken. To begin, the petitioner asserts that the IJ should have rescinded the in absentia removal order because he did not receive notice of the May 1 hearing. That notice, he laments, was sent to an address that contained the wrong zip code.

The petitioner's argument is deeply flawed. He concedes that he received notice of the original removal hearing (March 20, 2001). He does not suggest that it would have been improper for the IJ to enter an in absentia removal order when he boycotted that hearing. See 8 U.S.C. § 1229a(b)(5)(A). The IJ's precautionary

-9-

decision to schedule a second hearing did not excuse the petitioner's earlier absence.

In addition, the petitioner cannot escape the fact that any error in the mailing address used by the immigration court was his own contrivance. It was the petitioner who furnished the inaccurate zip code to the INS and who failed (despite repeated warnings) to correct that address when it was listed on the NTA. It rings hollow for the petitioner to assail the immigration court for mailing the notice to him at the very address that he had specified. This is especially so since notification of the outcome of the May 1 hearing — an in absentia order of removal — was contemporaneously sent to the petitioner at his correct mailing address.

Viewed against this backdrop, we discern no abuse of discretion in the IJ's determination that the petitioner was not entitled to an exception to the filing deadline due to lack of notice. See Xue Su Wang, 750 F.3d at 90.

Next, the petitioner challenges the IJ's failure to permit late reopening based on equitable tolling. As a preliminary matter, we note that it is uncertain whether the equitable tolling doctrine applies at all in the immigration context. See id. (leaving question open). We need not attempt to clarify this point today: even if equitable tolling applies, the petitioner cannot meet its prerequisites.

The equitable tolling doctrine is always to be used sparingly. See Irwin v. Dep't of Vets. Affairs, 498 U.S. 89, 96 (1990); Guerrero-Santana, 499 F.3d at 94. One recognized limitation on its use is that equitable tolling is unavailable to excuse a party who has failed to exercise due diligence. See Fustaquio do Nascimento v. Mukasey, 549 F.3d 12, 18 (1st Cir. 2008); Guerrero-Santana, 499 F.3d at 94.

In the case at hand, the BIA determined that the petitioner did not exercise due diligence in moving to reopen. That determination is supportable even if we assume, for argument's sake, that the petitioner received ineffective assistance of counsel. Regardless of what poor advice he may have gotten from Chen, the fact remains that he made no attempt to contact the immigration court for more than a decade. This lengthy period of inaction occurred notwithstanding the fact that the removal order was served by mail on the petitioner at his correct address and included clear instructions for filing a motion to reopen. And in all events, Chen's supposed disappearance should have alerted the petitioner that his immigration status might be in jeopardy.

Courts and agencies, like the Deity, tend to help those who help themselves. Here, the petitioner made no effort to help himself. His inordinate lassitude not only demonstrates a stunning lack of diligence but also serves to defeat his far-fetched claim of error. See Xue Su Wang, 750 F.3d at 90; see also Beltre-Veloz

-11-

v. <u>Mukasey</u>, 533 F.3d 7, 11 (1st Cir. 2008) (holding equitable tolling precluded by alien's failure to act for roughly eight years despite knowledge that removal proceedings had been commenced).

The petitioner balks, complaining that the agency failed to consider the merits of his ineffective assistance claim. This complaint is jejune: contrary to the petitioner's importunings, the record makes manifest that the allegations of ineffective assistance were squarely within the agency's contemplation when it concluded that the petitioner had not exercised due diligence. For example, the BIA's decision specifically noted that the eleven-year delay in filing a motion to reopen precluded a finding of due diligence even if the petitioner had received the parlous legal advice that he claimed to have gotten.

We smooth out two last wrinkles. First, we previously remanded this case for consideration of whether changed country circumstances formed a plausible basis for extending the time for moving to reopen. The BIA concluded that such an extension was not justified. The petitioner has not renewed this claim and, thus, we deem it abandoned. <u>See</u> <u>Ahmed</u> v. <u>Holder</u>, 611 F.3d 90, 98 (1st Cir. 2010); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

The second wrinkle is more exotic. On December 19, 2014, the petitioner filed an informative motion advising us of his intention to seek deferred action under the recently announced Deferred Action for Parental Accountability (DAPA) program. The

DAPA program is to be administered by the United States Citizenship and Immigration Service (USCIS). Our opinion in this matter is without prejudice to the filing of an application for DAPA relief with the USCIS. We take no view as to the petitioner's eligibility for such relief.

We need go no further. For the reasons elucidated above, we deny the petitions for review.


**So Ordered.**