# United States Court of Appeals
## For the First Circuit

No. 14-1766

ALAN SOARES RENAUT,

Petitioner,

v.

LORETTA E. LYNCH, UNITED STATES ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Thompson, and Barron,
<u>Circuit Judges</u>.

<u>William P. Joyce</u>, with whom <u>Joyce & Associates P.C.</u> was on brief, for petitioner.
<u>Kiley Kane</u>, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice Civil Division, with whom <u>Joyce R. Branda</u>, Acting Assistant Attorney General, and <u>Julie M. Iversen</u>, Senior Litigation Counsel, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

June 3, 2015

**THOMPSON**, <u>Circuit Judge</u>.  Alan Soares Renaut is a Brazilian citizen who unlawfully entered the United States, was detained at the Arizona border, failed to attend his deportation hearing, and was ordered by an immigration judge ("IJ") to be removed from the country.  Renaut, who claims he was never notified that his removal hearing had been scheduled, asked an IJ to reopen his case.  The IJ declined, and on its appellate review, the Board of Immigration Appeals ("BIA") affirmed the IJ's denial.

Now on appeal, Renaut argues that the IJ applied the wrong legal standard in reviewing his motion, and that when its turn came around, the BIA ignored the IJ's error and engaged in its own (impermissible) factfinding to affirm.

We agree that the IJ dropped the ball and applied the wrong legal standard in reviewing Renaut's motion (albeit a different legal error from the one Renaut identified).  The BIA likewise missed by affirming the IJ based on that incorrect legal principle.  Therefore, we vacate the BIA's decision and remand Renaut's case to the BIA.

## BACKGROUND

The relevant facts are undisputed.  Renaut is a native and citizen of Brazil who entered the United States through the Arizona-Mexico border in January 2003 without being inspected by an immigration officer.  He was detained upon entry and, while

- 1 -

detained, personally served with a Notice to Appear before the Immigration Court in Florence, Arizona, for a to-be-scheduled removal hearing. The notice charged Renaut with removability, pursuant to the Immigration and Nationality Act ("the Act"), which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). The notice also warned: "You are required to provide the [government], in writing, with your full mailing address . . . . You must notify the Immigration Court immediately by using [a change of address form] whenever you change your address . . . during the course of this proceeding."

Renaut was detained for about two months before being released from a detention facility. On March 3, 2003, he asked that his case be moved to the Boston Immigration Court. In his written motion, which was filed on his behalf by a representative,[1] Renaut stated that "[h]earing notices and other documents may be sent to the respondent at . . . 6 Corregidor Rd." in Framingham,

_____

[1] We refer to Renaut's counsel as a "representative" because Renaut now questions whether the person paid to represent him was actually an attorney.

- 2 -

Massachusetts.  The motion was allowed on March 14, 2003, and Renaut's case was transferred.

On January 28, 2004, the Boston Immigration Court mailed a notice to the Corregidor Road address to inform Renaut that he was scheduled to appear for a removal hearing on March 2, 2004. According to Renaut, he lived at the Corregidor Road home with a friend for a few months after his release, but even after moving out, continued to receive and collect his mail there.  The friend's sworn statement conveyed the same story.  The hearing notice was returned to the court, however, with a stamp on the envelope that read, "ATTEMPTED, NOT KNOWN."[2]  Renaut thus did not receive the hearing notice, and did not appear for the hearing.  An immigration judge in absentia ordered his removal from the United States to Brazil.

Fast-forward eight years.  In February 2012, Renaut married his now-wife, who is a United States citizen.  She filed a form I-130 Petition for Alien Relative on her hubby's behalf (U.S. citizens and lawful permanent residents may file this type of petition to help certain relatives become lawful permanent residents).  On April 9, 2013, Renaut also asked an immigration

---

[2] According to the government (and undisputed by Renaut), "attempted, not known" means that delivery was attempted, but the addressee was "not known" at the address.

judge to reopen the removal proceedings in light of his pending I-130 petition so that he could ask for adjustment of status to voluntary departure, arguing that he never received the removal hearing notice.

On April 30, 2013, the immigration judge denied the motion to reopen. The IJ found that Renaut was "made aware of his obligation to immediately notify the Immigration Court when he changed his address . . . and he failed to do so." The IJ then found that "although the hearing notice was returned to the Court as undeliverable, it had been sent to the Respondent at his last known address," and denied the motion.

Renaut appealed to the BIA, arguing that the IJ "failed to appreciate the distinction between the regulatory standards that govern the entering of an in absentia removal order and the requirements" to reopen one. The BIA nonetheless affirmed the immigration judge's denial because reopening the case was "not warranted on account of lack of notice," given that Renaut "evaded delivery of a properly sent [hearing notice] by relocating without providing the required change of address."

This appeal followed.

## STANDARD OF REVIEW

"In the immigration context, judicial review ordinarily focuses on the BIA's decision." Jianli Chen v. Holder, 703 F.3d

- 4 -

17, 21 (1st Cir. 2012). "But where, as here, the BIA adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit." Id. (citation omitted).

"We review the . . . denial of a motion to reopen for abuse of discretion." Chen v. Gonzales, 415 F.3d 151, 153 (1st Cir. 2005) (citation omitted). "The agency's resolution of such a motion will stand unless that resolution rests on a material error of law or a manifestly arbitrary exercise of judgment." Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015).

## DISCUSSION

As Renaut's Notice to Appear warned, when facing removal proceedings, an alien must "immediately provide (or have provided) the Attorney General with a written record of an address . . . at which the alien may be contacted respecting [removal] proceedings." 8 U.S.C. § 1229(a)(1)(F)(i). An alien must also keep his address current by "provid[ing] the Attorney General immediately with a written record of any change of the alien's address." Id. § 1229(a)(1)(F)(ii). These address requirements are important because the Act allows the Immigration Court to serve notices to appear (and other subsequent notices of scheduling changes) to an alien "through service by mail." Id. § 1229(a)(1).

- 5 -

Serious consequences can ensue for an alien who does not comply with the address reporting requirements.  The Act provides that "[n]o written notice [of a removal hearing] shall be required . . . if the alien has failed to provide the address required under section 1229(a)(1)(F)."  Id. § 1229a(b)(5)(B).  And failing to appear for a removal hearing means that the presiding immigration judge must order the alien's removal in absentia, so long as "the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."  Id. § 1229a(b)(5)(A).  The Act assumes that the government has met this evidentiary burden if it can show that notice was sent by regular mail and "there is proof of attempted delivery to the last address provided by the alien in accordance with subsection (a)(1)(F)."  Id. § 1229(c).

Despite this presumption of effective delivery written into the statute, the Act does recognize that even if a notice was properly sent to someone's last-reported address, he still might not receive it.  Upon motion, then, an immigration judge may rescind an in absentia removal order "if the alien demonstrates that [he] did not receive notice in accordance with [§ 1229(a)(1) or (2)]."[3]  Id. § 1229a(b)(5)(C)(ii).  Thus, an alien's case could

---

[3] An immigration judge could also rescind "upon a motion to reopen filed within 180 days after the date of the order of removal

- 6 -

be reopened if he failed to receive notice, so long as he complied with the statute's address requirements. "[W]hen considering a motion to reopen, the central issue is no longer whether the notice was properly mailed, as it is for the purpose of initially entering the in absentia order, but rather whether the alien actually received the notice." Matter of M-R-A-, 24 I. & N. Dec. 665, 672 (B.I.A. 2008) (citing Lopes v. Gonzales, 468 F.3d 81, 84 (2d Cir. 2006)).

Renaut's notice was returned to the Immigration Court, and thus, the government admits that Renaut did not receive his notice. Non-receipt does not, however, end the inquiry. The BIA has said, for instance, that an alien can't hide the ball when it comes time to appear in court, meaning he "cannot evade delivery of a properly sent Notice of Hearing by relocating without providing the required change of address and then request reopening of in absentia proceedings on the basis of a claim that he did not receive notice." Matter of M-R-A-, 24 I. & N. Dec. at 675. Here, the IJ (and then the BIA) relied on this "no evasion" rule to deny Renaut's motion. In response, Renaut contends that even though he did not update his address after moving from the Corregidor Road

---

if the alien demonstrates that the failure to appear was because of exceptional circumstances," 8 U.S.C. § 1229a(b)(5)(C)(i), but Renaut has not raised such an argument on appeal.

address, he was not evading notice because he continued to receive mail there after moving out.

The IJ did not address this assertion, but denied Renaut's motion on the ground that he did not comply with his obligation to notify the Immigration Court when he "changed his address," and that "although the hearing notice was returned to the Court as undeliverable, it had been sent to the Respondent at his last known address." The BIA took a similar tack and assumed (without deciding) that Renaut was telling the truth when he said "his friend continued to reside on Corregidor Road and was able to receive mail for him." Even still, the BIA decided, Renaut's case could not be reopened because his Notice to Appear "properly advised the respondent that he was required [to provide] 'your full mailing address' (as opposed to the mailing address of a friend)," and because Renaut did not provide his residential address, he evaded notice.

According to both the IJ and BIA, then, Renaut could not have his case reopened because he never bothered to provide the government with his new residential address after he physically moved from the Corregidor Road home. Relocating without providing an updated residential address -- even if a valid mailing address is still on file -- categorically amounts to evasion of a hearing notice, the IJ and BIA assumed.

We conclude that the IJ and BIA abused their discretion in so deciding, and that a remand is the appropriate relief to cure the error. While evasion is certainly a legitimate reason to deny a motion to reopen, "evasion" by its nature entails some wrongdoing, i.e., some effort to actually avoid the notice. See Sanchez v. Holder, 627 F.3d 226, 233 (6th Cir. 2010) ("[P]roceedings will not be reopened if the alien fails to receive a hearing notice because the alien's own conduct made him or her unreachable."). Particularly concerning is that the BIA does not offer any authority to support its generally-applicable contention that Renaut was required to provide a residential address (as opposed to a valid mailing address), such that he has committed some lawlessness by his mere failure to provide a residential address.

It is also not apparent to us why the BIA (and the government in its briefing) assume "address" means residential address. Renaut's Notice to Appear informed him that he was "required to provide . . . your full mailing address," and that he would have to "notify the Immigration Court immediately by using [a change of address form] whenever you change your address . . . during the course of this proceeding." (Emphasis added). The notice mentions nothing of a residential or physical address requirement. Likewise, the Act makes no indication that a physical

- 9 -

address is required. See 8 U.S.C. § 1229(a)(1)(F)(i) (requiring alien to provide an address where he "may be contacted respecting [removal] proceedings"); id. § 1229(a)(1)(F)(ii) (requiring alien to "provide . . . a written record of any change of the alien's address"). We are aware of no BIA precedent explaining that "address" is defined as a residential one in this context. The government even admitted at oral argument that an alien could be permitted to provide, for instance, a post office box number where he could be contacted. Thus, we simply do not see the basis for the BIA's brusque conclusion that Renaut "evaded" his hearing notice merely because he asked that his removal communications be sent to what he claims was a valid mailing address, as opposed to his (ever-changing) abode. See also Arrieta v. I.N.S., 117 F.3d 429, 432 (9th Cir. 1997) (per curiam) (stating that the BIA erred by requiring petitioner to provide a residential address, even though she provided a valid mailing address); Mecaj v. Mukasey, 263 F. App'x 449, 451 (6th Cir. 2008) (unpublished) (concluding that petitioner "may present evidence that he normally would receive correspondence at that location, yet did not receive notice"); Gomez-Palacios v. Holder, 560 F.3d 354, 361 (5th Cir. 2009) (finding that petitioner was not entitled to rescission because "his failure to receive actual notice of the time of his postponed hearing was the result of not complying with his

- 10 -

obligation to keep the immigration court apprised of his current mailing address" (emphasis added)).

Along similar lines, we likewise reject the government's reading of § 1229a(5)(B).  The Act provides that "[n]o written notice shall be required [to remove an alien in absentia] if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title."  8 U.S.C. § 1229a(5)(B).  The government assumes this provision of the statute means that an alien is not entitled to notice at all if he changes his residential address without informing the Immigration Court.

Under the government's reading, then, an alien in Renaut's situation is outright precluded from arguing that his removal proceeding should be reopened for failure to receive notice because his physical relocation meant that he was no longer entitled to notice of the removal hearing at all.  But, as we have explained, it is not at all clear that an alien fails to comply with the address requirement when he changes residence.  And in any event, the statute still instructs the government to send notice to the alien's last known address, whatever that address may be.  See 8 U.S.C. § 1229(c); accord Mecaj, 263 F. App'x at 451 ("[B]ecause [the alien] did provide an address, the government remained under an obligation to send notice to that address." (emphasis in original)).  Thus, the mere fact that an alien has

- 11 -

changed his residential address neither categorically precludes that alien from moving to reopen his removal proceeding nor, once he does so, automatically compels a finding that he evaded notice.

As we indicated above, evasion of a hearing notice is a perfectly legitimate reason to deny a motion to reopen. But whether Renaut "evaded" his notice is a factual determination that must be made upon an evidentiary evaluation. See Matter of M-R-A-, 24 I. & N. Dec. at 674 (holding that "all relevant evidence submitted to overcome the . . . presumption of delivery must be considered"). Problematic here is that the IJ did not make sufficient factual findings that would allow us to affirm an evasion finding. Namely, Renaut provided evidence to show that he was still successfully receiving other mail at the Corregidor Road address, even after he moved out. Tellingly, and as the government conceded at argument, Renaut's actual removal order was sent to the Corregidor Road address and did not get bounced back, which suggests that Renaut was being truthful when he said that he could still receive immigration-related mail there. No mention of this evidence, or Renaut's other justifications for non-receipt, are mentioned in the IJ's factual findings. And while the BIA acknowledged Renaut's argument that his friend was able to receive mail for him at the Corregidor Road address, neither the IJ nor BIA made factual findings that resolved whether or not this

assertion was true.[4]  We therefore cannot meaningfully review the validity of Renaut's motion.  See Rotinsulu v. Mukasey, 515 F.3d 68, 73 n.1 (1st Cir. 2008) ("Typically, we have found the absence of specific findings problematic in cases in which such a void hampers our ability meaningfully to review the issues raised on judicial review.").  This case is thus distinguishable from the cases the government relied on in its brief, where the petitioners did not receive their notices, which were sent to their last-known addresses, because they failed to update their addresses.  Shia v. Holder, 561 F.3d 19, 20-21 (1st Cir. 2009) (per curiam); Shah v. Mukasey, 533 F.3d 25, 28 (1st Cir. 2008).  As we have discussed, the IJ and BIA made no such finding in the instant case.

---

[4] Indeed, the BIA could not have -- it generally is not permitted to make factual findings on appellate review.  In Re Adamiak, 23 I. & N. Dec. 878, 880 (B.I.A. 2006) (citing 8 C.F.R. § 1003.1(d)(3)(iv)).

Relatedly, we already mentioned that Renaut's primary briefed argument concerning the BIA was that the BIA engaged in impermissible factfinding to conclude that he, as a factual matter, evaded delivery of the notice.  But as far as we can tell, Renaut did not first raise the claim of impermissible factfinding to the BIA in a motion to reconsider, and so we do not have jurisdiction to consider that claim.  See Meng Hua Wan v. Holder, 776 F.3d 52, 57 (1st Cir. 2015) (holding that "we lack jurisdiction to hear and determine the petitioner's claim that the BIA engaged in impermissible factfinding" because that claim was "directed to the BIA's actions rather than to anything that happened before the IJ," and so first needed to be exhausted with the BIA).  However, because we read the BIA's decision as adopting and affirming the IJ's material errors of law, as opposed to "giv[ing] rise to a new issue," id., we do not consider Meng Hua Wan a barrier to reviewing Renaut's appeal.

- 13 -

We recognize that both Renaut and the government might interpret the IJ and BIA decisions differently from the way we do. Recall that Renaut argued in his opening brief that the IJ applied the standard for a removal order (which focuses on whether a hearing notice was properly sent), as opposed to the standard of a rescission order (which rides on whether the hearing notice was received). Thus, Renaut claimed, the IJ never decided one way or another whether Renaut evaded his hearing notice. Renaut then urged that the BIA failed to recognize the IJ's error, and instead engaged in its own factfinding to conclude that Renaut evaded his hearing notice. Renaut changed course at oral argument, however, where his counsel additionally argued that the BIA erred in applying a blanket rule that anyone who does not provide an updated residential address has evaded notice.

In the government's brief, it acknowledged that Renaut was penalized for failing to update his residential address, but argued that such a rule was proper under the language of the statute. At argument, though, the government also threw us a curveball, claiming there that the BIA's decision did not impose a categorical ban on motions to reopen when aliens provide only a valid mailing address. In fact, the government actually acknowledged that some aliens do not have a stable home address, so providing a friend's address or a post office box would be

- 14 -

appropriate in those situations. The problem with the instant case, the government argued, was that Renaut gave no explanation as to why he wanted his mail to go to Corregidor Road instead of his residential address, even after his friend moved. And that failure to explain amounted to evasion of his hearing notice, as a matter of fact, according to the government.

As our discussion shows, we read the IJ and BIA decisions as concluding that as a legal matter, Renaut "evaded delivery of a properly sent" hearing notice simply because he failed to update his physical address, and that because of his evasion, he was not entitled to reopening. We believe this is the most sensible reading of the two decisions in concert, given that neither made factual findings that would allow for the conclusion that Renaut evaded his notice as a matter of fact. See Kurzon v. U.S. Postal Serv., 539 F.2d 788, 792 (1st Cir. 1976) ("'[W]e must look to (the agency's) opinion, not to the arguments of its counsel, for the underpinnings of its order.'" (quoting FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 246 (1972))). To the extent we have misconstrued its intended holding, the BIA has the chance to clarify the basis of its decision on remand.

Finally, the government also argues that even if Renaut did not have to provide his physical address, there was another reason to deny his motion -- the fact that he sat on the bench for

- 15 -

the near-decade that followed the entering of his removal, never bothering to follow up with the Immigration Court on when his hearing might be scheduled. Sure, in the portion of the decision addressing whether exceptional circumstances warranted reopening, the IJ did make factual findings that Renaut "failed to make diligent efforts to follow up regarding his removal proceedings," and that the record lacked evidence that Renaut took any steps to "follow up on his case during the more than ten years after his Motion to Change Venue to Boston was granted on March 14, 2003." But the BIA did not address that issue, and so we won't either. See Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004) ("[W]here the BIA's decision adopts portions of the IJ's opinion, we review those portions of the IJ's opinion that the BIA has adopted."). Specifically, while the BIA "ultimately conclude[d] that the Immigration Judge properly declined to reopen" based on exceptional circumstances, the BIA did not directly address the diligence issue, or state whether it agreed with or intended to adopt the IJ's factual findings in that regard. Particularly in light of our reservations as to whether the IJ considered all the evidence Renaut offered up to show that he complied with the address requirements, and the lack of factual findings as to whether or not he evaded his hearing notice, we still deem the appropriate course of action here a remand, which will at least

- 16 -

allow the BIA to clarify.  See Kurzon, 539 F.2d at 792-93 (noting that while "we will accept less than ideal clarity in administrative findings," "we ought not to have to speculate as to the basis for an administrative agency's conclusion" (citations and quotations omitted)).

For these reasons, we **vacate** the order of the BIA and **remand** the case for further proceedings consistent with this opinion.