# United States Court of Appeals
## For the First Circuit

No. 18-1162

GEOVANNY PINEDA,

Petitioner,

v.

MATTHEW G. WHITAKER,
ACTING ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Kevin MacMurray, Daniel W. Chin, and MacMurray & Associates
on brief for petitioner.
Chad A. Readler, Acting Assistant Attorney General, Linda S.
Wernery, Assistant Director, and Lindsay B. Glauner, Senior
Litigation Counsel, Office of Immigration Litigation, on brief for
respondent.

November 19, 2018

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General
Matthew G. Whitaker has been substituted for former Attorney
General Jefferson B. Sessions, III as the respondent.

**SELYA**, **Circuit Judge**.  We recently wrote that "[m]otions to reopen — especially untimely motions to reopen — are disfavored in immigration cases.  Consequently, an alien who seeks to reopen removal proceedings out of time ordinarily faces a steep uphill climb."  Sihotang v. Sessions, 900 F.3d 46, 48 (1st Cir. 2018).  This case, in which the petitioner waited roughly four and one-half years before moving to reopen his removal proceedings, bears witness to the difficulty of the ascent.  Concluding, as we do, that the petitioner has not shown a sufficient reason to excuse his delay, we uphold the rejection of his motion to reopen by the Board of Immigration Appeals (BIA) and deny his petition for judicial review.

The petitioner, Geovanny Pineda, is a native and citizen of El Salvador.  He entered the United States illegally in 1999.  In 2001, he applied for temporary protected status (TPS) and employment authorization.[1]  His TPS application was received (but not acted upon immediately) and his application for employment authorization was granted.  On April 10, 2003, the petitioner's

---

[1] TPS affords aliens protection from removal from the United States upon a determination by the Attorney General that the conditions in the alien's homeland prevent his or her safe return.  See 8 U.S.C. § 1254a.  The Attorney General designated El Salvador (the petitioner's homeland) for the TPS program in 2001 after a series of earthquakes struck the country that year.  See Villanueva v. Holder, 784 F.3d 51, 53 (1st Cir. 2015) (citing Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001)).

TPS application was denied. He unsuccessfully moved for reconsideration, but nonetheless remained in the United States.

We fast-forward to May of 2010, at which time the Department of Homeland Security (DHS) initiated removal proceedings against the petitioner. The DHS charged that the petitioner was removable as "[a]n alien present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). Approximately four months later, the petitioner appeared before an immigration judge (IJ) and, through counsel, conceded removability. At the same time, he indicated that he wanted to apply for withholding of removal and protection under the United Nations Convention Against Torture (CAT). The IJ ordered a ten-month continuance until June 29, 2011, so that the petitioner could prepare his applications for these forms of relief from removal. A warning accompanied the continuance: the IJ admonished the petitioner that if he failed to file full-blown applications for relief within the specified period, his preliminary requests would be considered "abandon[ed]."

On June 29, 2011, the petitioner failed to make the anticipated filings. His attorney sought a further continuance, telling the IJ that he had not been able to assemble the completed applications within the prescribed interval. The IJ denied a further continuance, found the petitioner's applications for withholding of removal and CAT protection to be abandoned, and

ordered the petitioner removed to El Salvador. In his bench decision, the IJ observed that the ten-month continuance he had given the petitioner was "quite sufficient" and that the petitioner had been explicitly warned about the consequences of non-compliance with that deadline.

The petitioner, acting pro se, filed a notice of appeal on July 28, 2011. He asserted that he did "not speak English" and insisted that he had not been made aware of the filing deadline. Rather, he had "relied on [his] lawyer to tell [him] what [he] needed to do to apply for asylum." Thereafter, the petitioner secured the services of a second attorney, who filed a brief in support of his appeal. In that brief, the petitioner argued that the IJ had abused his discretion in deeming the petitioner's requests for withholding of removal and CAT protection abandoned. His argument posited that applications for withholding of removal and CAT protection were requests for "mandatory" protection and, thus, a single procedural misstep was not enough to justify their summary denial.

On December 28, 2012, the BIA affirmed the order of removal. In so doing, it upheld the IJ's determination that the petitioner had abandoned his requests for withholding of removal and CAT protection. The BIA noted, inter alia, that an application for relief that is not filed within the time limits set by the IJ is deemed waived. See 8 C.F.R. § 1003.31(c). Here, moreover, the

- 4 -

IJ had "adequately apprised the [petitioner], through counsel, of the deadline for filing his application[s] . . . and that if he failed to timely submit his applications, they would be deemed abandoned."   With respect to the petitioner's veiled suggestion that the missed deadline was attributable to the ineptitude of his first attorney, the BIA responded that more than a generalized assertion was needed to make out an ineffective assistance of counsel claim.   Citing Matter of Lozada, 19 I. & N. Dec. 637, 639 (B.I.A. 1988), the BIA proceeded to give the petitioner chapter and verse concerning the prerequisites for an alien's ineffective assistance of counsel claim.[2]

---

[2] The BIA's decision in Lozada is widely recognized as a leading case with respect to claims of ineffective assistance of counsel in the immigration context.  See, e.g., García v. Lynch, 821 F.3d 178, 180-81 (1st Cir. 2016); Orehhova v. Gonzales, 417 F.3d 48, 51-52 (1st Cir. 2005); Saakian v. I.N.S., 252 F.3d 21, 25-27 (1st Cir. 2001).  Lozada requires that a motion to reopen based on ineffective assistance of counsel be supported by:

> (1) an affidavit explaining the petitioner's agreement with counsel regarding legal representation; (2) evidence that counsel has been informed of the allegations of ineffective assistance and has had an opportunity to respond; and (3) if it is asserted that counsel's handling of the case involved a violation of ethical or legal responsibilities, a complaint against the attorney filed with disciplinary authorities or, in the alternative, an explanation for why such a complaint has not been filed.

García, 821 F.3d at 180 n.2 (quoting Taveras-Duran v. Holder, 767 F.3d 120, 123 n.2 (1st Cir. 2014)); see Lozada, 19 I. & N. Dec. at 639.

The petitioner did not seek judicial review of the BIA's removal order, and the matter lay fallow for roughly four and one-half years. At that point, the petitioner — through yet a third attorney — filed a motion beseeching the BIA to vacate the 2012 removal order and reopen the removal proceedings. Along with his motion to reopen, the petitioner proffered applications for asylum, withholding of removal, and CAT protection. The motion was untimely, see 8 C.F.R. § 1003.2(c)(2), but the petitioner maintained that the ninety-day filing deadline should be equitably tolled due to ineffective assistance of counsel. Relatedly, he claimed to have learned only recently that his first attorney had been disbarred in October of 2012 for failing to represent his immigration clients appropriately and misrepresenting matters pertaining to them. The BIA found no basis for equitable tolling: in its view, the petitioner had not exercised due diligence during the four and one-half years after he was explicitly informed of the steps required to raise his ineffective assistance of counsel claim. Consequently, the BIA refused to relax the time bar and denied the motion to reopen as untimely. See id. This petition for judicial review followed.[3] See 8 U.S.C. § 1252(a)(1), (b)(6).

---

[3] The petitioner also sought a stay of removal. In an unpublished order, we concluded that the petitioner had not satisfied the requirements for a stay because he had failed to show either a likelihood of success on the merits or irreparable injury. See Nken v. Holder, 556 U.S. 418, 434-35 (2009). The petitioner has since been removed to El Salvador, but his removal

- 6 -

Motions to reopen removal proceedings run at cross-purposes with "the compelling public interests in finality and the expeditious processing of proceedings." Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). Such motions are, therefore, disfavored. See Sihotang, 900 F.3d at 48; Guerrero-Santana, 499 F.3d at 92. As a result, we review the BIA's denial of a motion to reopen under a highly deferential abuse-of-discretion standard. See Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016). We will uphold the BIA's decision unless the petitioner can show that the BIA either committed a material error of law or exercised its authority arbitrarily, capriciously, or irrationally. See id.

Some special constraints apply to motions to reopen removal proceedings. In particular, such motions are "limited both numerically and temporally." Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015). As a general rule, a party may file only a single motion to reopen, which must be filed within ninety days of the issuance of the final administrative order. See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Here, the petitioner filed only a single motion to reopen, but that motion was plainly out of time: he did not file it until more than four

does not render his petition for judicial review moot. See Lopez v. Gonzalez, 549 U.S. 47, 52 n.2 (2006).

- 7 -

years after the entry of the BIA's final order of removal. To excuse this protracted delay, the petitioner seeks refuge in the equitable tolling doctrine. See, e.g., Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (per curiam) (describing doctrine). Specifically, he avers that his first attorney's ineffective assistance, combined with the fact that he learned only recently that the attorney had been disbarred, entitles him to the balm of equitable tolling.[4] In the alternative, he argues that his due process right to present his case for relief from removal was violated through his first attorney's ineffective assistance. We examine these claims one by one.

We start with a word of caution: "whether equitable tolling can suspend the time limits applicable to motions to reopen" is an open question in the First Circuit. Xue Su Wang v. Holder, 750 F.3d 87, 90 (1st Cir. 2014). Here, however, we need not answer that question, as the petitioner's quest for equitable tolling is manifestly unavailing. Thus, we assume — without deciding — that equitable tolling may be available in a proper case.

---

[4] The petitioner's claim of ineffective assistance is directed solely at his first attorney. He does not suggest that his second attorney, who represented him in the original proceedings before the BIA, performed ineffectively.

This arguendo assumption does not benefit the petitioner because his case presents no fertile soil for equitable tolling. "The equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own." Neves, 613 F.3d at 36. To reap the benefit of equitable tolling, a party must establish: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Xue Su Wang, 750 F.3d at 90 (quoting Neves, 613 F.3d at 36).

In the case at hand, the BIA found equitable tolling to be beyond the petitioner's reach because he had not exercised due diligence during the lengthy period that elapsed between the BIA's affirmance of the IJ's removal order and the date on which the petitioner moved to reopen the removal proceedings. The petitioner faults the BIA's reasoning, arguing that he diligently pursued his rights by hiring multiple attorneys and attending hearings. Relatedly, he argues that he was unable to assert an ineffective assistance of counsel claim between the date of the BIA's 2012 order of removal and the filing of his 2017 motion to reopen because he did not know that his first attorney had been disbarred. These arguments miss the mark: they do not adequately explain why the petitioner waited four and one-half years before making any effort to reopen the removal proceedings, notwithstanding that the

- 9 -

BIA had informed him in its 2012 decision of the elements that he needed to assert his ineffective assistance of counsel claim. Forewarned should be forearmed, see Kassel v. Gannett Co., 875 F.2d 935, 940 (1st Cir. 1989) (citing Miguel de Cervantes, Don Quixote de la Mancha III, 10 (1615)), and the petitioner's largely unexplained delay in the assertion of his ineffective assistance of counsel claim is the polar opposite of due diligence. See Meng Hua Wan, 776 F.3d at 58 (upholding BIA finding of no due diligence where petitioner attempted to reopen years after being removed despite having received instructions regarding reopening).

The petitioner demurs, pointing out that he hired three separate lawyers during the course of his removal proceedings. But merely hiring lawyers does not create a safe harbor especially where, as here, none of the petitioner's lawyers was on deck during the critical period. His first attorney represented him before the IJ; his second attorney represented him during his appeal of the IJ's removal order to the BIA; and his third attorney filed the untimely motion to reopen and the instant petition for judicial review. That chronology leaves an obvious gap between 2012 and 2017. Yet the petitioner has offered no plausible explanation for the lengthy period of inactivity between the work done by his second attorney (ending in 2012) and the engagement of his third attorney (beginning in or around 2017). This period of inactivity, which occurred after the BIA informed him of the prerequisites for

- 10 -

an ineffective assistance of counsel claim, solidly supports the BIA's finding that the petitioner failed to pursue his immigration case with due diligence. See Guerrero-Santana, 499 F.3d at 94 (upholding BIA determination that petitioner failed to exercise due diligence when he waited four years before hiring an attorney and did not promptly move to reopen).

Nor does the fact that the petitioner learned only recently that his first attorney had been disbarred tip the decisional calculus. For one thing, the petitioner's first attorney was disbarred two months before the BIA's 2012 order of removal was entered. Were the petitioner to have employed due diligence, he could have verified the status of his first attorney at the time the BIA dismissed his appeal.

For another thing — and perhaps more importantly — the BIA's 2012 decision carefully delineated the requirements for an ineffective assistance of counsel claim, and there is no requirement that the client show the offending attorney has been disbarred. See supra note 2. Yet the petitioner sat on his hands as the years went by and, for aught that appears, did not lift a finger for over four years to assemble the ingredients of an ineffective assistance claim. We have said before — and today reaffirm — that "[t]he [equitable tolling] doctrine is not available as a means of rescuing a party who has failed to exercise due diligence." Guerrero-Santana, 499 F.3d at 94.

That ends this aspect of the matter. The BIA's discretionary decision about whether to grant an untimely motion to reopen is entitled to great respect. See Beltre-Veloz v. Mukasey, 533 F.3d 7, 11 (1st Cir. 2008). Here, the BIA has neither committed a material error of law nor acted arbitrarily, capriciously, or irrationally. On this record, we discern no abuse of discretion in the BIA's determination that the petitioner failed to demonstrate due diligence in filing his untimely motion to reopen. What we have said in a different context rings equally true here: "The law ministers to the vigilant not to those who sleep upon perceptible rights." Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987).

This leaves the petitioner's claim that the BIA violated his due process rights by preventing him from presenting his case on the merits. This claim stumbles at the threshold: the petitioner did not raise it in his motion to reopen and, therefore, we lack jurisdiction to adjudicate it. We explain briefly.

In the immigration context, it is a condition precedent to judicial review of any given claim that the petitioner "has exhausted all administrative remedies available to [him] as of right." 8 U.S.C. § 1252(d)(1). The purpose of this exhaustion requirement is to ensure that a court will not commandeer an agency's prerogatives. See Meng Hua Wan, 776 F.3d at 56. To this end, a court must "allow[] the agency the first opportunity to

- 12 -

correct its own bevues." Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013).

In this case, the record makes manifest that the petitioner's due process claim is debuting in this court; the petitioner simply did not raise this claim, or anything like it, in his motion to reopen. Nor was the claim raised at any time before the BIA. Consequently, we lack jurisdiction to entertain the petitioner's due process claim. See García v. Lynch, 821 F.3d 178, 181-82 (1st Cir. 2016); cf. Ahmed v. Holder, 611 F.3d 90, 97 (1st Cir. 2010) (explaining that "arguments not made before the BIA may not make their debut in a petition for judicial review of the BIA's final order").

We need go no further. For the reasons elucidated above, the petition for judicial review is **denied**.