# United States Court of Appeals
## For the First Circuit

No. 19-1965

NOE SOSA MOLINA,

Petitioner,

v.

WILLIAM P. BARR,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Stanley H. Cooper on brief for petitioner.
Joseph H. Hunt, Assistant Attorney General, Civil Division, Leslie McKay, Senior Litigation Counsel, Office of Immigration Litigation, and Corey L. Farrell, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, on brief for respondent.

March 9, 2020

**STAHL**, **Circuit Judge**. Noe Sosa Molina ("Molina"),[1] a native and citizen of Guatemala who illegally entered the United States in 2002 and was placed in removal proceedings in 2005, applied for asylum and withholding of removal on the grounds that he feared gang violence upon his return to Guatemala. An Immigration Judge ("IJ") denied Molina's applications in 2007, and the Board of Immigration Appeals ("BIA") denied his appeal in 2008.

In 2018, Molina moved to reopen his case on the grounds that he had received ineffective assistance of counsel in the 2007 proceedings and that country conditions in Guatemala had changed substantially since his merits hearing. The BIA denied the motion to reopen, finding it was not timely and was not subject to equitable tolling because Molina had not demonstrated due diligence in the ten years between his final removal order and his motion to reopen. The BIA also determined that Molina had not demonstrated that conditions in Guatemala had changed substantially since 2007.

Molina now petitions this court for review of the BIA's denial. After careful consideration of Molina's claims and the BIA's order, we deny the petition for review.

---

[1] While the cover of Molina's brief and several documents in the record refer to the petitioner as "Noe Sasa Molina," we refer to him as "Noe Sosa Molina" in accordance with the weight of record evidence, including the respondent's birth certificate, marriage certificate, sworn declarations, and other filings submitted in his immigration proceedings.

- 2 -

## I. Factual Background and Procedural History

In 2002, Molina entered the United States without inspection. In 2005, the Department of Homeland Security issued Molina a Notice to Appear and placed him in removal proceedings. Sometime in 2005, after he received the Notice to Appear, Molina retained Susan Mills as his attorney. In 2006, Molina conceded removability.

Later in 2006, Molina applied for asylum and withholding of removal, requesting voluntary departure in the alternative. Molina stated that he had come to the United States because he "wanted to help [his] mother," but that after he left Guatemala, gang members had broken into his mother's home in an attempt to rob her, as they believed she had money. He also claimed that gang members had killed a neighbor whose husband had spent time in the United States after she fought back during an attempted robbery. As Molina stated in his application, he feared "returning to Guatemala because of the rising power of these gangs, who especially target those who have been in the U.S. and are therefore believed to have money." Molina also submitted documentary evidence describing general country conditions in Guatemala, including widespread human rights violations. The 2006 State Department Country Report on Human Rights Practices (the "State Department Report"), which the IJ also considered, stated that "[s]ocietal violence," including gang activity, "occurred

- 3 -

widely throughout" Guatemala at that time.

On June 11, 2007, the IJ denied Molina's applications for asylum and withholding of removal and granted voluntary departure, ordering Molina to depart on or before August 10, 2007. Regarding Molina's asylum application, the IJ found Molina statutorily ineligible because he had failed to apply within one year of entering the United States and had not established extraordinary circumstances necessary to obtain tolling of the delay.

Regarding Molina's withholding of removal application, the IJ stated that Molina could qualify for withholding of removal to Guatemala "if he demonstrates that his life or freedom would be threatened in that country on account of one of the protected grounds under the [Immigration and Nationality] Act," § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). However, the IJ determined that Molina was not a victim of past persecution, as he had "testified that nothing ever happened to him when he was in Guatemala." The IJ also concluded that Molina could not establish that it was more likely than not that he would face future persecution in Guatemala on account of a protected ground, as Molina had testified that he feared gang members would target him because they suspected he had money, not because of any particular belief he held nor any membership in a particular social group, as the statute requires.

- 4 -

Molina timely appealed the IJ's decision to the BIA, where he argued that the IJ erred in finding he had not established a well-founded fear of future persecution upon returning to Guatemala on account of his membership in a particular social group. He contended that the "relevant social group" was "a Guatemalan man who has lived in the U.S., which situation is known to Guatemalan gangmembers [sic] who thereby believe that he has access to money." Molina argued further that "[b]ackground reports in the record certainly confirm[ed] widespread violence and inability of the police to control gang and criminal violence in Guatemala," and that the State Department Report in particular "indicate[d] that gang violence remains a prevalent problem in Guatemala" and that there was a "pattern of [governmental] failure to protect victims of gang violence."

On June 13, 2008, the BIA dismissed Molina's appeal, agreeing with the IJ's conclusion that Molina had not shown that he would more likely than not suffer persecution upon his return to Guatemala. In reaching this conclusion, the BIA determined that it was "speculative to presume that gangs in Guatemala will more likely than not target the respondent." The BIA also concluded that any potential targeting by gang members "would appear to be motivated by their desire to steal from the respondent and not to punish him on account of a protected ground," noting that "[a]n alien's fear of his nation's general condition is not

a protected ground." Accordingly, the BIA dismissed the appeal, affirming the IJ's grant of voluntary departure and ordering Molina to depart within sixty days of its decision.

Molina did not depart as ordered, and ten years after the adverse decision of the BIA, he moved the BIA to reopen his case on two grounds: first, that but for what he alleged was ineffective assistance of counsel, the IJ would have approved his withholding of removal application, and second, that country conditions in Guatemala had changed substantially since 2007. Regarding ineffective assistance of counsel, Molina argued that though he had retained Mills, he had at his 2007 hearing instead been greeted by another attorney, whom Molina alleged he had not previously spoken to with respect to his proposed testimony. Molina also contended that neither Mills nor the substitute attorney had prepared him to testify at the hearing. Thus, Molina alleged that "his failure to give more complete in[-]depth and persuasive testimony . . . was a result of lack of preparation and understanding of the complete nature of the proceeding." Molina stated that he had not moved to reopen sooner because he had not become aware of his ineffective assistance claim until he consulted another attorney in 2018. He offered no explanation for why he waited until 2018 to consult an attorney after his deportation order a decade before.

In support of his claim that country conditions in

Guatemala had changed substantially since 2007, Molina submitted declarations from his mother and brother, who stated they were being harassed and threatened by gang members there. Molina's mother further stated in her declaration that family members of a "coyote" who had sold her a visa for Molina's travel to the United States had begun extorting her once she stopped paying him and had threatened to kill Molina upon his return to Guatemala. Molina also submitted documents describing general country conditions in Guatemala, which discussed, among other topics, widespread gang-related extortion and violence.[2]

On September 3, 2019, the BIA denied Molina's motion to reopen. While the BIA acknowledged Molina's assertion that he was not aware of his ineffective assistance claim until he consulted another attorney, it denied the motion with respect to this claim as time-barred, as it was filed long after the expiration of the statutory ninety-day filing deadline. 8 U.S.C. § 1229a(c)(7)(C)(i). Citing this court's decision in Tay-Chan v. Barr, 918 F.3d 209, 213 (1st Cir. 2019), the BIA declined Molina's request to equitably toll the deadline, concluding that Molina had not shown that during the ten years between the final order and the motion to reopen he was "pursuing his rights diligently" or

---

[2] Molina also submitted a USAID Central America and Mexico Gang Assessment dated April 2006 (the "2006 USAID Report"), which identified Guatemala's "thriving gang culture" and the ongoing "problem of gang violence" during and before 2006.

was prevented from so moving because of an "extraordinary circumstance" that "stood in his way." The BIA also determined that "[i]t was not a reasonable exercise of due diligence for the respondent to remain unlawfully in the United States for such a length of time without taking any action." See Meng Hua Wan v. Holder, 776 F.3d 52, 58 (1st Cir. 2015).

The BIA also concluded that Molina had not sufficiently shown that country conditions in Guatemala had changed substantially since 2007. While the BIA acknowledged that Molina's submitted documentary evidence "show[ed] poor conditions in Guatemala, including ongoing violence and threats of violence," it determined that the new evidence did not show a material change in conditions that were not present at the original merits hearing. Accordingly, the BIA denied the motion to reopen. Molina timely petitioned this court for review of the BIA's denial.

## II. Discussion

"We review the BIA's denial of [Molina's] motion to reopen under the 'highly deferential abuse-of-discretion standard.'" Tay-Chan, 918 F.3d at 212 (quoting Pineda v. Whitaker, 908 F.3d 836, 840 (1st Cir. 2018)). Under this standard, we uphold the BIA's decision unless Molina "can show that the BIA 'committed a material error of law or exercised its authority arbitrarily, capriciously, or irrationally.'" Id. (quoting Gyamfi v. Whitaker, 913 F.3d 168, 172 (1st Cir. 2019)). Moreover, "an

- 8 -

alien who seeks to reopen removal proceedings out of time ordinarily faces a steep uphill climb." Pineda, 908 F.3d at 838 (quoting Sihotang v. Sessions, 900 F.3d 46, 48 (1st Cir. 2018)).

Molina now contends that the BIA erred in declining to equitably toll the ninety-day filing deadline and in concluding he had not demonstrated that country conditions in Guatemala had substantially changed since his hearing. We address each argument in turn, and conclude that both are unavailing.

## A. Equitable Tolling of the Statutory Filing Deadline

A noncitizen is generally limited to a single motion to reopen, which must ordinarily be filed within ninety days of a final administrative order of removal. See 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). While this court has acknowledged certain exceptions to this rule, we "have not yet given the thumbs-up on applying equitable tolling to motions to reopen." Tay-Chan, 918 F.3d at 214. Thus, whether such motions may be equitably tolled at all remains an "open question." Pineda, 908 F.3d at 841.

We need not resolve this question, however, as Molina's claim fails even assuming arguendo that equitable tolling applies. Equitable tolling "is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). A noncitizen

- 9 -

cannot begin to meet the requirement for equitable tolling where he has not shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  Here, the BIA did not abuse its discretion in concluding that Molina had made neither showing.

As the BIA did, we acknowledge Molina's argument that he could not have known about his ineffective assistance of counsel claim until he consulted another attorney.  But as we held in Tay-Chan, where we considered this very argument, Molina's assertion "tells us nothing about why he waited nearly [ten] years before taking any steps at all to address his immigration status."  918 F.3d at 214.  Molina does not identify -- and the record does not show -- evidence of any steps he took between the 2008 final order of removal and his 2018 consultation with a new attorney to pursue further relief in his case.  Indeed, "it is this unexplained delay that . . . undermines any assertion that he pursued his rights (the ineffective assistance claim, the motion to reopen) with the requisite due diligence."  Id.  Molina also does not identify -- and again, the record does not show -- evidence of any "extraordinary circumstance" that prevented him from timely moving to reopen.[3]  Neves, 613 F.3d at 36 (quoting Pace, 544 U.S. at 418).

---

[3] The respondent argues that Molina has waived appellate consideration of the extraordinary circumstances prong because

Accordingly, we find that the BIA did not abuse its discretion in declining to equitably toll the filing deadline and do not reach the merits of Molina's ineffective assistance claim.

## B. Changed Country Conditions

Molina next contends that the BIA abused its discretion in concluding he had not established changed country conditions since his merits hearing. This argument also fails.

Motions to reopen based on previously unavailable evidence of changed country conditions are not subject to statutory time limits. See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). A petitioner seeking to reopen his case on materially changed country conditions grounds must "(1) demonstrate changed conditions through evidence that was not available at the original merits hearing and (2) establish a prima facie case of eligibility for relief." Sánchez-Romero v. Sessions, 865 F.3d 43, 45 (1st Cir. 2017). In making its determination, the BIA "compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." Haizem Liu v. Holder, 727 F.3d 53, 57 (1st Cir. 2013) (alteration in original) (quoting In re S-Y-G-, 24 I. & N. Dec. 247, 253 (BIA 2007)).

---

Molina's opening brief did not challenge the BIA's determination that he had failed to make this specific showing. We do not decide whether Molina has waived the issue, as we in any event find no error in the BIA's conclusion.

- 11 -

As to the first prong, a petitioner must make a "'convincing demonstration' that the conditions in his home country have intensified or deteriorated between his merits hearing . . . and his motion to reopen." Sánchez-Romero, 865 F.3d at 45 (quoting Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008)). However, "[i]f the newly submitted evidence reveals no more than a continuation of previously existing conditions, it is inadequate to show changed country circumstances." Nantume v. Barr, 931 F.3d 35, 38 (1st Cir. 2019) (quoting Xiao He Chen v. Lynch, 825 F.3d 83, 87 (1st Cir. 2016)).

The BIA did not abuse its discretion in concluding that while the evidence presented by Molina in his motion to reopen "show[s] poor conditions" in Guatemala, it "does not show a material change in [country] conditions since [Molina's] last hearing." (Emphasis added). At his 2007 merits hearing, Molina argued and submitted evidence to show both that gang violence was prevalent in Guatemala generally and that he and his family were specifically endangered by gang violence given his presence in the United States. And while Molina now offers reports detailing more recent gang violence in Guatemala and declarations outlining more recent gang-related threats to himself and his family,[4] his

---

[4] The declarations provided by Molina's family detailing recent threats only bear on our analysis should we reach the question of Molina's prima facie eligibility for relief, as "a significant change in . . . personal circumstances" is "relevant

- 12 -

argument remains substantively the same:  that he fears a return to his home country due to gang activity.

Molina did not articulate to the BIA in his motion to reopen -- and does not articulate to this court now -- any material change in conditions in Guatemala, as both his 2007 and 2018 arguments rest on his fear of gang violence there.  Nor does he "point to [any]thing in [the new evidence] that plausibly suggests the existence of a material change in country conditions," or identify "any meaningful inconsistency between the [new evidence] and the BIA's decision."  Nantume, 931 F.3d at 40.  Nothing in the record suggests that the BIA abused its discretion in concluding that the recent country condition reports, which discuss gang activity in Guatemala and in Central America more broadly, establish only "ongoing violence and threats of violence" -- not a material change in country conditions.[5]  Indeed, the record makes clear that "the situation [in Guatemala] is dreadful -- but it has been dreadful throughout the relevant period."  Id. at 39.

---

only to the extent that [a petitioner] can demonstrate that conditions have worsened generally" in the country for a particular social group.  Nantume, 931 F.3d at 40-41.  As Molina has not established changed country conditions, we do not consider his prima facie eligibility.

[5] Some evidence submitted with Molina's motion to reopen shows that gang violence had proliferated in Guatemala for many years. In particular, the 2006 USAID Report, issued a year before Molina's merits hearing, identified Guatemala's "thriving gang culture" and the ongoing "problem of gang violence."

We therefore conclude that the BIA did not abuse its discretion in denying Molina's motion to reopen on the grounds that he did not establish changed country conditions.

## III. Conclusion

For the reasons above, we deny the petition for review of the BIA's denial of Molina's motion to reopen.