# United States Court of Appeals
## For the First Circuit

No. 19-1282

JAIRO ARQUIMEDES MACHADO SIGARAN,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Kayatta,
Circuit Judges.

Jeffrey B. Rubin, with whom Todd C. Pomerleau and Rubin Pomerleau PC were on brief, for petitioner.
John F. Stanton, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, with whom Joseph H. Hunt, Assistant Attorney General, Civil Division, U.S. Department of Justice, and Keith I. McManus, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

August 5, 2020

**KAYATTA**, <u>Circuit Judge</u>. Petitioner Jairo Arquimedes Machado Sigaran ("Machado") appeals from the denial of his request for temporary protected status ("TPS") under 8 U.S.C. § 1254a. Eligibility for such relief requires, among other things, that the noncitizen maintain a continuous residence and physical presence within the United States for a period of time that began in this instance on December 27, 1997. During that time Machado admittedly spent ninety-eight days outside the United States pursuant to an order of removal. He argues that he can excuse those ninety-eight days as "brief, casual, and innocent," <u>id.</u> § 1254a(c)(4)(A)-(B), because his order of removal was later rescinded by an immigration judge. In denying petitioner's request, the Board of Immigration Appeals determined that the rescission of the removal order was improper, leaving petitioner with no excuse for his time outside the country. For the following reasons, we affirm the decision of the BIA denying petitioner's request for TPS relief.

## I.

Machado first came to the United States to join his mother in Massachusetts at the age of sixteen. He was picked up by border patrol agents near Brownsville, Texas, a few days after he crossed the United States-Mexico border. While detained, in December 1997, he was issued a document titled "notice to appear" in immigration court. The notice did not include the date and time of his first immigration hearing. It did, however, state:

- 2 -

> You must notify the Immigration Court immediately . . . whenever you change your address or telephone number during the course of this proceeding. . . . If you do not . . . provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing.

Machado was then transferred to Boston and released in January 1998 to his mother's friend and landlady, Marisel Machuca. Upon release, he was served with a document entitled "Notification Requirement for Change of Address" instructing him in English and Spanish to keep both INS and the Immigration Court advised of any address changes, warning him that failure to do so could result in entry of an order of removal, in absentia. Machado at that time provided the address of Machuca, with whom Machado and his mother were then residing. Machado and his mother lived at that location for only a few weeks and moved out in late January 1998. Neither Machado nor his mother informed immigration authorities of his change of address. Hearing notices were then sent to Machuca, who failed to pass them on to Machado. As a result, Machado missed his immigration hearings. At his final removal hearing in September 2000, he was ordered removed in absentia.

After the removal order was issued, Machado lived in the United States for several more years, fathered three children, was arrested four times but only convicted once (of misdemeanor trespass), and began to apply for immigration relief (he filed two

ultimately unsuccessful TPS applications).  In October 2011, he was arrested again, this time by immigration officers, and removed to El Salvador on November 30, 2011, pursuant to the 2000 removal order.

In January 2012, his lawyer moved to reopen his case with the Texas immigration court based on the fact that he had not received actual notice of his final removal hearing in September 2000.  In March 2012 -- ninety-eight days after his removal -- Machado returned to the United States, was again apprehended by authorities, and pled guilty to illegal reentry.  In April, the Texas immigration judge granted Machado's motion to reopen and vacated the in absentia removal order, reasoning that although Machado had received "proper notice" of his final removal hearing, "he [had been] purposefully kept unaware of the [hearing] notices by his mother's friend."  The Texas immigration judge then transferred Machado's case to Boston.

In the course of continued proceedings in Boston, Machado conceded that he was removable but requested various forms of relief and withholding of removal.  The immigration judge decided that Machado had abandoned several of his applications, and the judge pretermitted two others, including Machado's TPS application, based on Machado's previous convictions for trespass and illegal reentry.  Machado appealed the Boston immigration judge's decisions to the BIA, and in the meantime sought and

received post-conviction relief from the trespassing conviction in Massachusetts state court. Because the conviction was vacated and no longer a bar to relief, the BIA remanded the case back to the Boston immigration judge, and the parties refocused their dispute on whether Machado's alleged lapse in residence and physical presence due to the November 2011 deportation made him ineligible for TPS. The Boston immigration judge ruled that it did, and on appeal in March 2017 the BIA affirmed the Boston immigration judge's decision.

Machado then petitioned this court for review. The government made an unopposed motion to remand to the BIA for further consideration of Machado's eligibility for TPS, specifically with regard to his argument that his removal did not break the continuous physical presence or residence requirements because the removal order had been rescinded by the Texas immigration judge. We granted that motion. In his briefing on remand, Machado additionally argued that the immigration court never had jurisdiction over him because his original notice to appear had not included the date and time of his first hearing. In February 2019, the BIA dismissed Machado's jurisdictional argument and further determined that the Texas immigration judge had not had authority to rescind the in absentia removal order, and Machado's removal therefore prevented him from meeting the

- 5 -

continuous physical presence and residence requirements. Machado timely appealed again.

## II.

We review legal issues on appeal from the BIA de novo but defer to the agency's reasonable interpretations of the agency's governing statutes, including, as relevant here, 8 U.S.C. § 1101 et seq. See Soto-Hernandez v. Holder, 729 F.3d 1, 3 (1st Cir. 2013); see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984).

## A.

As a preliminary issue, we address Machado's argument, citing Pereira v. Sessions, 138 S. Ct. 2105 (2018), that because his initial notice to appear did not list the date and time of his first immigration hearing, the immigration court never had jurisdiction over his case. The government makes no claim that Machado failed to preserve this argument. In Pereira, the Supreme Court held that a "putative notice to appear" without date and time included is not sufficient to trigger the "stop-time" rule. Id. at 2114–16.[1] In Goncalves Pontes v. Barr, however, we squarely decided that -- even in light of the Supreme Court's holding in

---

[1] The stop-time rule stops the running of the clock for an immigrant's physical presence in the United States for purposes of cancellation of removal "when the alien is served a notice to appear under section 1229(a)" of the INA. Id. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)).

- 6 -

Pereira -- a notice to appear that fails to specify a hearing date and time is sufficient to initiate proceedings in the immigration court under 8 C.F.R. § 1003.14(a).  Goncalves Pontes v. Barr, 938 F.3d 1, 5-7 (1st Cir. 2019) (citing In re Bermudez-Cota, 27 I. & N. Dec. 441, 447 (B.I.A. 2018)); see also United States v. Mendoza, 2020 WL 3529571, at *3 (1st Cir. June 30, 2020) (explaining that our decision in Goncalves Pontes did not require subsequent service of a notice of hearing in order for a notice to appear to vest jurisdiction in the immigration court).  Machado offers no relevant reason for distinguishing Goncalves Pontes.  As a result, this jurisdictional challenge under Pereira fails.

**B.**

Machado's primary argument on appeal is that his ninety-eight-day absence from the country was brief, casual, and innocent. Eligibility for TPS relief requires -- among other things -- the applicant to have "been continuously physically present in the United States since the effective date of the most recent designation" under § 1254a(b)(1) of the state of which he is a national, and to have "continuously resided in the United States since such date as the Attorney General may designate."  8 U.S.C. § 1254a(c)(1)(A)(i)-(ii).  An applicant can still satisfy the requirements for continuous physical presence and continuous

residence if any absence from the United States was "brief, casual, and innocent."  Id. § 1254a(c)(4)(A)-(B).[2]

The regulations further defining the phrase "brief, casual, and innocent" make clear that an absence due to an order of removal does not qualify.  See 8 C.F.R. § 1244.1(2).  We do not read Machado's brief to argue otherwise.  The question, then, is whether the Texas immigration judge's rescission of Machado's removal order had the effect of making Machado's absence brief, casual, and innocent when it would otherwise not have been.  We previously remanded this appeal to allow the BIA to consider that question.  In the words of the government's motion to remand, which we referenced in our remand order:

> Remand will permit the agency to further consider Petitioner's eligibility for TPS in light of the rescission of the underlying removal order.  In particular, the agency may further consider whether a departure pursuant to an otherwise valid removal order may nevertheless be deemed "brief, casual, and innocent" for purposes of TPS where the

_____

[2]  Additionally, there is an exception from the continuous residence requirement for "brief temporary trip[s] abroad required by emergency or extenuating circumstances outside the control of the alien."  8 U.S.C. § 1254a(c)(4)(B).  Machado argues that this exception applies to his case.  Because the exception is only available to solve a continuous-residence problem, however, and not a continuous-physical-presence problem, id. § 1254a(c)(4)(A), it cannot save Machado here.  Even if he established continuous residence, he would still have to establish continuous physical presence.

> underlying order has been deemed void ab
> initio.[3]

The BIA seems to have assumed on remand that a departure pursuant to a removal order could be brief, casual, and innocent if the order was later rescinded as invalid from the outset. The BIA thus pivoted to address the question of whether the rescission itself was lawful, concluding that it was not. Machado now argues that it was improper for the BIA to reach the issue of whether the Texas immigration judge's rescission of the removal order was correct because, according to Machado, that issue was outside the bounds of our remand order.

A broad reading of our remand order could certainly allow for review of the Texas immigration judge's rescission decision -- the issue of Machado's "eligibility for TPS in light of the rescission of the underlying removal order" might easily turn on the legal effectiveness of that underlying order. Machado urges us to adopt a narrower reading of our remand. But as long as Machado had fair notice of the BIA's intention to consider whether the rescission was improper, we see no reason to opt for a narrow reading of our remand mandate. In the ordinary case, after all, the BIA generally has substantial sua sponte authority, which allows it to choose to address the merits of even an issue

---

[3] This language is from the government's unopposed motion to remand, which we incorporated into our remand order.

not raised by the parties and reopen previously-decided cases. See Meng Hua Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015); Guerrero v. Holder, 766 F.3d 122, 127 (1st Cir. 2014) (explaining the BIA's sua sponte authority to reopen immigration proceedings); Ghassan v. INS, 972 F.2d 631, 635 (5th Cir. 1992) ("Unlike the circuit courts of appeals, the BIA is not a court of error."). We do not hold that a remand mandate cannot limit the application of that sua sponte authority. See Mendez-Gutierrez v. Gonzales, 444 F.3d 1168, 1172–73 (9th Cir. 2006) ("The [BIA], like the district court, has no power to expand our remand beyond the boundary ordered by our court."); see also Saqr v. Holder, 580 F.3d 414, 420 (6th Cir. 2009). But we see no reason to read such a limitation into our broadly-framed order in this case, as long as Machado had notice that the BIA might well consider whether the rescission ruling was valid. And he did have such notice in the form of the government's brief on remand expressly urging the BIA to find the rescission ruling invalid. Machado also argues that the BIA should not have considered a challenge to the validity of the rescission, given that the government failed to appeal the rescission or otherwise challenge its propriety prior to our remand to the BIA. But, as we have already explained, the BIA has the authority to raise issues and reopen cases sua sponte.

Given that the BIA was within its discretion to review the rescission, we ask next whether its legal analysis overturning

the rescission order was correct. The statute spells out the circumstances in which an in absentia order of removal may be rescinded by an immigration judge:

> Such an order may be rescinded only --
>
> (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances . . .
>
> (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

8 U.S.C. § 1229a(b)(5)(C).

Two of the three possible justifications for rescission recognized by the foregoing text clearly do not apply here. Machado does not argue that his motion was filed within 180 days of the order of removal (in fact, it was filed approximately twelve years later). Nor does he contend that he was in federal custody at the time of his final removal hearing. That leaves only the third recognized justification: a demonstration that the alien "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." The Texas immigration judge and all parties to this proceeding -- including Machado -- presume that the government

- 11 -

sent to Machado the requisite notice.[4]  The issue is whether he "did not receive" that notice.

The Texas immigration judge found that Machado did not in fact receive the notice and that that fact, combined with Machado's youth and Machuca's decision not to forward the notice, justified rescission.  But as the BIA has held, a person who does not receive a mailing because he changed his address without telling the immigration authorities cannot claim that he failed to receive notice.  M-R-A-, 24 I. & N. Dec. 665, 675 (B.I.A. 2008); see 8 U.S.C. § 1229a(b)(5)(A) (presuming that a notice is effectively delivered when mailed to a person's last-provided address); Renaut v. Lynch, 791 F.3d 163, 167–68 (1st Cir. 2015). Instead, a person can only show that he did not receive notice "so long as he complied with the statute's address requirements." Renaut, 791 F.3d at 167; see also Shia v. Holder, 561 F.3d 19, 20–21 (1st Cir. 2009) (per curiam); Shah v. Mukasey, 533 F.3d 25, 28 (1st Cir. 2008).

Machado has not shown or even argued that he complied with those requirements -- that is, he did not provide "a written record of any change of [his] address or telephone number."  8

---

[4]  While Machado argues extensively that the notices sent to him were insufficient to vest jurisdiction in the immigration court, see supra subsection II.A., he did not argue before the BIA nor does he argue before us that any deficiencies in the notices mean that he has met the requirements of § 1229a(b)(5)(C).

U.S.C. § 1229(a)(1)(F)(ii). And indeed, "[n]o written notice [is] required [for an in absentia removal] if the alien has failed to provide the address required under [8 U.S.C. § 1229(a)(1)(F)]." Id. § 1229a(b)(5)(B).

While in Renaut we explained that an alien need not necessarily update his residential address after moving if he can still be reached at the address on file, 791 F.3d at 168–69, Machado has made no argument that he intended to or could have received mail at Machuca's address. Even if he had so argued, his argument would come up against the government's evidence that the notices were sent there and received by Machuca. And while he was not yet an adult at the time he failed to tell the INS of his address change, he was released to the custody of his mother, and there is no claim that she was unaware of his obligations.[5] The upshot is that, because Machado did not update his address when he moved and his notices were sent to his last-known address, proper notice was given under the meaning of the statute and his removal order was not eligible for rescission under 8 U.S.C. § 1229a(b)(5)(C)(ii).

Because the BIA correctly found that the immigration judge's rescission order was improper, we need not decide whether

---

[5] So we need not decide how these rules would play out were the custodial adult unaware of the warnings given to a minor concerning address changes.

an absence caused by an order of removal that was later properly rescinded could be brief, casual, and innocent. We thus hold only that the BIA did not abuse its discretion in finding that the Texas immigration judge's rescission of the removal order was incorrect, Machado's challenge to the in absentia removal order fails, and Machado's resulting ninety-eight-day absence from the country was therefore not "brief, casual, and innocent" under the regulations.

## III.

For the foregoing reasons, we <u>affirm</u> the BIA's March 2017 and February 2019 orders insofar as they deny TPS relief.