# United States Court of Appeals
## For the First Circuit

Nos. 25-1340, 25-1544

WALTER WAMBUGU MUCHIRI,

Petitioner,

v.

TODD BLANCHE, Acting United States Attorney General,[*]

Respondent.

PETITIONS FOR REVIEW OF ORDERS OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Howard and Rikelman, Circuit Judges.

Chelsea Eddy, with whom Gilles Bissonnette, SangYeob Kim, and American Civil Liberties Union of New Hampshire were on brief, for petitioner.

Andrea N. Gevas, Trial Attorney, Civil Division, U.S. Department of Justice, with whom Brett A. Shumate, Assistant Attorney General, Civil Division, and John S. Hogan, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as appellee.

June 3, 2026

BARRON, **Chief Judge**. Walter Wambugu Muchiri ("Muchiri") petitions for review of two orders from the Board of Immigration Appeals ("BIA"). The first, issued on March 7, 2025, dismissed Muchiri's appeal of an order denying his application for asylum, humanitarian asylum, and withholding of removal. The second, issued on June 4, 2025, granted Muchiri's motion to reconsider the BIA's March 7 ruling but then dismissed his appeal. We grant the petitions for review and vacate and remand the BIA orders.

**I.**

On May 3, 2024, the U.S. Department of Homeland Security ("DHS") served Muchiri, a Kenyan native, with a notice to appear at removal proceedings. The notice to appear charged Muchiri with being subject to removal under § 237(a)(1)(B) of the Immigration and Nationality Act for overstaying his visa. See 8 U.S.C. § 1227(a)(1)(B). Muchiri was ordered to appear at removal proceedings in Chelmsford, Massachusetts, on June 3, 2024.

On September 11, 2024, the Immigration Judge ("IJ") assigned to Muchiri's case held removal proceedings to consider Muchiri's application for asylum, humanitarian asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ denied the application in full.

To succeed on a claim for asylum, an applicant must show that he "is unable or unwilling to return or to avail [himself] of the protection of [his] own country 'because of [past] persecution

- 3 -

or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" De Pena-Paniagua v. Barr, 957 F.3d 88, 92 (1st Cir. 2020) (quoting 8 U.S.C. § 1101(a)(42)(A)). An applicant "must establish that he either suffered past persecution (which creates a rebuttable presumption of future persecution) or has a well-founded fear of future persecution." Alexandrescu v. Mukasey, 537 F.3d 22, 25 (1st Cir. 2008).

The presumption of a well-founded fear of future persecution "can be rebutted by a showing that conditions in the applicant's native country have so changed that he no longer has a well-founded fear of future persecution" such that the "presumption disappears and the applicant is not entitled to asylum." Chreng v. González, 471 F.3d 14, 21 (1st Cir. 2006). In the absence of a showing of past persecution that gives rise to the rebuttable presumption of future persecution, an applicant can also show an "independent likelihood of future persecution." Rodríguez-Villar v. Barr, 930 F.3d 24, 27 (1st Cir. 2019).

An applicant "who has shown past persecution but failed to show a well-founded fear of future persecution," Escobar v. Garland, 122 F.4th 465, 469 n.3 (1st Cir. 2024) (citation modified), may be eligible nonetheless for humanitarian asylum. Ordonez-Quino v. Holder, 760 F.3d 80, 93-94 (1st Cir. 2014) (describing the "humanitarian exception"). To qualify, the

- 4 -

applicant must show either "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." Id. at 94 (citing 8 C.F.R. § 1208.13(b)(1)(iii)(A)-(B)).

An applicant seeking withholding of removal must show "a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground." Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021). Withholding of removal is a more difficult standard to meet because "[u]nlike asylum, withholding of removal requires 'a clear probability of persecution,' as opposed to 'a well-founded fear.'" Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023)).

In its oral decision denying asylum to Muchiri, the IJ found that Muchiri was credible and had successfully established that he had suffered past persecution "on account of family." The IJ based that finding on evidence that Muchiri put forward to show that while in Kenya he suffered abuse at the hands of his father, who is "a Mungiki," which is described throughout the record as a movement, cult, tribe, gang, clan, and minority religion. The IJ further found, however, that the government had overcome the presumption of a well-founded fear of future persecution based on

evidence that showed that Muchiri is an adult who is no longer subject to his father's control and country conditions in Kenya have changed, such that the police are now making an effort "to combat the Mungiki group."

The IJ also denied Muchiri's claim for humanitarian asylum. It did so on the ground that Muchiri failed to show the required severity of past harm or a reasonable possibility of other serious harm to warrant humanitarian asylum. The IJ further explained that, even if Muchiri were eligible for asylum and humanitarian asylum, he would have been denied such relief on discretionary grounds due to his past encounters with law enforcement in the United States.

The IJ next determined that Muchiri's failure to establish eligibility for asylum necessarily precluded him from meeting the higher standard for withholding of removal. The IJ did note that, in any event, Muchiri failed to show what was required "with respect to," in its words, "government unwilling and unable for future harm."

On October 7, 2024, Muchiri, represented by new counsel, appealed the IJ's order to the BIA. In his brief to the BIA, Muchiri requested that the BIA reverse the IJ's decision denying his various claims or remand for further proceedings if necessary. On March 7, 2025, the BIA dismissed the appeal.

On March 12, 2025, Muchiri filed a motion for reconsideration of the BIA's March 7 decision and a request for an emergency stay of removal. But, on April 7, 2025, and so before the BIA ruled on his motion for reconsideration of its March 7 order dismissing the appeal of the IJ's order denying his various claims for relief, Muchiri timely filed a petition for review with this Court of the BIA's March order.[1]

On June 4, 2025, while Muchiri's petition for review of that BIA order was pending in our Court, the BIA granted Muchiri's motion for reconsideration but dismissed the appeal. The BIA explained that it had erred in finding that Muchiri had only been harmed by his father, "as the record shows [Muchiri] also suffered harm from other members of the Mungiki movement." The BIA determined, however, that all the incidents in which Muchiri had been subjected to harm while in Kenya occurred when he was a child. The BIA thus determined that these incidents did not undermine the BIA's original decision to affirm the IJ's ruling based on its "ultimate determination" that Muchiri's age and the country conditions "support a fundamental change in circumstances rebutting his well-founded fear of future persecution."

In ruling on the motion for reconsideration, the BIA also declined to disturb its prior rulings affirming the IJ's

---

[1] The case in which the petition for review of the BIA's March 7 order was filed is number 25-1340.

denial of Muchiri's claims for humanitarian asylum and CAT protection. The BIA explained that, although Muchiri had suffered harm from his father, "age mates" (whom Muchiri defined as people his age who had already joined the Mungiki), and "other Mungiki members," he had not established "compelling reasons relating to this past harm or a reasonable possibility of other serious harm warranting a grant of humanitarian asylum." (Citing Matter of L-S-, 25 I. & N. Dec. 705, 710-14 (BIA 2012) (citation modified)). Similarly, the BIA found that Muchiri had failed to explain how the sources of past harm that the BIA overlooked in its first decision, such as the other Mungiki members and Muchiri's age mates, made Muchiri eligible for protection under the CAT because he still had not demonstrated that he was more likely than not to be tortured by or with the acquiescence of public officials.

The same day that the BIA issued its order granting Muchiri's motion for reconsideration but dismissing his appeal, Muchiri petitioned for review of that order to this Court.[2] As a result, there were then pending in our Court two separate petitions, the first concerning the BIA's initial ruling dismissing his appeal and the second concerning the BIA's ruling granting Muchiri's motion for reconsideration of the earlier

_____

[2] The case in which the petition for review of the BIA's June 4 order was filed is number 25-1544.

- 8 -

ruling but dismissing the appeal again.  On June 25, 2025, this Court consolidated the two petitions for review.

## II.

"Although our review is focused on the final decision of the BIA, to the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision as well."  Mijangos v. Bondi, 167 F.4th 539, 544 (1st Cir. 2026) (citation modified).  Under the substantial evidence standard, we "uphold factual findings . . . unless the record compels a contrary conclusion."  Ferreira v. Garland, 97 F.4th 36, 46 (1st Cir. 2024).  We review the BIA's legal conclusions de novo.  Id.

## III.

In his petitions for review, Muchiri contends that the BIA erred in affirming the IJ's denial of his claims for asylum, humanitarian asylum, and statutory withholding of removal.[3]  He identifies a long list of ways in which the BIA erred;[4] at bottom, though, each asserted flaw rests on a common contention.

_____

[3] The BIA affirmed the denial of Muchiri's claim for CAT protection, but Muchiri does not challenge that ruling in his petition.

[4] Muchiri identifies the following legal errors: (1) limiting the source of the presumptive well-founded fear of future persecution to the same sources as those of past persecution; (2) incorrectly finding that DHS rebutted his well-founded fear of future persecution; (3) failing to remand to the IJ to determine whether there was past persecution on account of his ethnicity and/or imputed Mungiki membership; (4) confining its consideration of "other serious harm" to which Muchiri could be exposed, in its

- 9 -

The common contention is that the BIA failed to address his claim that he reasonably feared future persecution by Kenyan government officials on account of either his family status or his ethnicity. Muchiri identifies two distinct arguments within that claim that the BIA erred by failing to address. The first is that he could show a reasonable fear of future persecution from the Kenyan police based on evidence in the record that the police would presume that he was Mungiki "because of his father" and then persecute him on that basis. The second is that he could show a reasonable fear of persecution because the record suffices to show that the Kenyan police would presume that he was Mungiki based on his status as ethnically Kikuyu and then persecute him in consequence.

**A.**

The government urges us to reject the petitions for review on the straightforward ground that Muchiri simply failed to make either the family-status-based or the ethnicity-based

_____

consideration of humanitarian asylum, to the sources of past harm; (5) failing to consider Muchiri's claim that there was a reasonable possibility he would be seriously harmed by Kenyan officials; and (6) failing to address whether Muchiri's claims about the dangers of being presumed Mungiki formed a basis for an independent well-founded fear of future harm, even in the absence of qualifying past harm. Muchiri also argues that, even if there was no legal error, the record compels conclusions contrary to those arrived at by the BIA in determining that his family status was no longer an objective reason to fear persecution and in determining that there is no reasonable possibility that other serious harms could befall Muchiri upon his return to Kenya.

argument for finding that he reasonably feared future persecution from the Kenyan police and so cannot complain that the BIA did not address either one. Generally, however, "a reviewing court should judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court." Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001). And here, because the BIA did not refer to either argument in ruling as it did, we simply cannot tell from the BIA's rulings whether the BIA overlooked the arguments in question or declined to consider them because Muchiri inadequately developed them or otherwise failed to raise them properly.

To be sure, the government argues that it is unsurprising that the BIA did not refer in its decisions to Muchiri's claim based on his fear of future persecution by the Kenyan police because, in the government's view, Muchiri's briefs to the BIA did not provide any inkling that he was pursuing such a claim. Thus, the government contends, there can be no basis for concluding that the BIA overlooked arguments that were never made at all. But we cannot say that the record compels the conclusion that Muchiri in fact waived either argument or otherwise improperly raised it, such that we could infer, on that basis, that the BIA did not reference either argument because of a failure in making it that is attributable to Muchiri himself. See Hurtado v. Lynch, 810 F.3d 91, 93 (1st Cir. 2016) ("We review the denial of a motion to

reconsider for abuse of discretion. Because the new arguments raised in Hurtado's motion to reconsider were previously available but not previously asserted, the BIA did not abuse its discretion in denying his motion." (citation omitted)); see also Prabhudial v. Holder, 780 F.3d 553, 555-56 (2d Cir. 2015) (noting both that "[i]f the BIA elects to consider an argument that was not raised before an IJ, we can review the argument" and that "the BIA may refuse to consider an issue that could have been, but was not, raised before an IJ," in which case "review is limited to whether the BIA erred in deeming the argument waived"); cf. Sigaran v. Barr, 970 F.3d 1, 6 (1st Cir. 2020) ("In the ordinary case, after all, the BIA generally has substantial sua sponte authority, which allows it to choose to address the merits of even an issue not raised by the parties and reopen previously-decided cases.").

To that last record-based point, the record shows that Muchiri had the following to say in the proceedings below pertaining to the family-status-based argument for reasonably fearing future persecution by the Kenyan police. For starters, the record shows that, in his affidavit in support of his asylum application, Muchiri explained that the "police who should protect [him] are mostly involved in unlawful unrest, abductions, killings and disappearance of citizens" and that "[t]here is no safe place and [he] fear[s] for [his] life." It then further shows that, during the subsequent proceedings in front of the IJ, when asked

- 12 -

whom he was afraid of in addition to his father, Muchiri responded "[his] family, [his] family relative[s], the community, and even the police."

When we turn to what the record reveals about the administrative appeal, we find that in his brief to the BIA, Muchiri expressly asserted that the IJ "did not know about the challenges that the Kenyan government faces in controlling the Mungiki, nor the police roundups (without due process) of perceived Mungiki, especially for political reasons around election time, and how [he] fears that he would be presumed Mungiki because his father forced him to attend ceremonies and drink animal blood." And he went on in that same brief to explain that the IJ "misunderstood not only the power of this cult . . . but misunderstood the threats to [him] that give rise to numerous [particular social groups] and bases for relief," and specifically noted that "the IJ failed to recognize that the police themselves may harm" him, which "also gives rise to that brand new [particular social group] of perceived/presumed Mungiki."

As to what the record shows about what Muchiri had to say in the proceedings below about the ethnicity-based argument for reasonably fearing future persecution by the Kenyan police, we start once again with his affidavit in support of his asylum application. Muchiri explained in it that he is ethnically Kikuyu and that he was expected to strictly follow Kikuyu tradition.

Then, in his appeal to the BIA, Muchiri explained in his brief that "[d]uring the current wave of Mungiki reemergence, police crackdowns have included violence and unlawful detention of imputed Mungiki members, including young men like [Muchiri] who have been targeted as ethnic Kikuyus."

The record goes on to show that in his motion for reconsideration to the BIA, Muchiri argued that "there has been no fundamental change in personal circumstances around his family status" because becoming an adult did not change his "fear" that he would be "wrongly accused of being Mungiki on account of his Kikuyu ethnicity" by the Kenyan police. The record also shows that in that same motion, he argued that the country conditions "call into question whether the government is targeting people with false allegations of Mungiki status as a political pretext and on account of their ethnicity." He argued in that motion that the article the IJ cited in support of the conclusion that the police were combatting Mungiki "calls into question . . . whether the arrests [of suspected Mungiki] were politically motivated." The article included allegations from a lawyer that the arrests "were politically motivated" and that his clients "have been criminali[z]ed just because they are young Kikuyu men."

Given these parts of the record, we cannot say that the BIA would be barred from considering either of the arguments about future persecution that Muchiri contends that the BIA wrongly

- 14 -

failed to address.  We make no ruling, however, as to whether, if, after considering the record, the BIA properly could decide that neither argument was adequately developed or otherwise properly raised.  We think it prudent at this stage of the proceedings to address any dispute that may arise in that regard only after the BIA itself has made a ruling one way or the other.

**B.**

We do recognize that the government makes what appears to be a fallback argument as to why we must deny Muchiri's petitions for review.  Here, the government appears to contend that even if Muchiri did properly raise an argument that he contends that the BIA wrongly ignored, "the Agency already addressed that possible argument in its discussion of the country conditions in Kenya."[5]

To support that contention, the government argues as follows.  It contends that the BIA's discussion of the country conditions -- specifically, those relating to the government's crackdown on Mungiki members -- "illustrate[s] how the police and Kenyan government are actively combatting the Mungiki members and group," which the government maintains "undermine[s] Muchiri's

_____

[5] "We refer to the BIA and the IJ collectively as the 'agency.'"  <u>Murillo Morocho</u> v. <u>Garland</u>, 80 F.4th 61, 63 n.1 (1st Cir. 2023).

- 15 -

claim that the Agency did not consider the police in its decisions."

The government fails to explain, though, how the BIA's consideration of the police's efforts to combat Mungiki or its references to police crackdowns on Mungiki members addresses the arguments that Muchiri contends that the BIA erred by not addressing -- that he reasonably fears future persecution based on being presumed to be Mungiki due to either his family or ethnic status.

The government does say that Muchiri's opposition to the Mungiki undermines his claim that he would be targeted by the police. But this response fails to grapple with the key portion of the arguments that Muchiri claims that he made to the BIA but that the BIA overlooked -- namely, that the record supportably shows that he reasonably fears being mistakenly presumed to be Mungiki.

The government separately asserts that the "numerous country conditions articles do not suggest that someone like Muchiri would be a target for the police based on the facts he presented." But the government does not point to the BIA itself having considered the claim that Muchiri would be targeted by the Kenyan police. Nor are we persuaded that, if the BIA were to treat this claim as properly before it, the record would compel the BIA to reject it on evidentiary grounds. Cf. Silva v. Ashcroft, 394

F.3d 1, 4-5 (1st Cir. 2005) (noting that under the substantial evidence standard of review, "we will set aside the BIA's findings only if, and to the extent that, 'the record evidence would compel a reasonable factfinder to make a contrary determination'" (quoting Aguilar-Solis v. INS., 168 F.3d 565, 569 (1st Cir. 1999))).

The government also argues that Muchiri is simultaneously -- and so inconsistently -- "claiming that the Kenyan government is not doing enough to combat the Mungiki" and that "the government is doing too much in targeting the Mungiki, which he could be considered a member of through his father." But here, too, our underlying concern is that the BIA has not passed on that question of imputed Mungiki membership, even though, according to Muchiri, he asked that it do so. If Muchiri were right on his imputed-membership claim, we do not think that asserted inconsistency would be the kind that would compel the BIA to reject Muchiri's claim insofar as it was properly presented. And so, the government's argument fails to convince us that we need not remand to the BIA so that it can clear up whether it understands Muchiri to have made the arguments in question or not and to give its reasons for reaching such a conclusion.

Finally, we recognize that in its March 7 decision, the BIA stated that, because its rulings on the matters it did address were dispositive, it was "declin[ing] to address [Muchiri's]

remaining appellate arguments concerning the forms of relief and protection for which [Muchiri] applies." But that statement does not reveal whether the "remaining appellate arguments" it had in mind were the arguments that Muchiri contends he made to the BIA but that the BIA did not address. And, given the reasons set forth above for our uncertainty about why the BIA made no mention of those arguments in either of the rulings at issue, we do not see how the BIA's orders can stand.

**IV.**

In sum, we conclude that the BIA's orders do not explain the basis for rejecting the arguments about future persecution that Muchiri contends the BIA wrongly failed to address. See Halo v. Gonzalez, 419 F.3d 15, 18 (1st Cir. 2005) (noting that "[w]e may remand . . . if the BIA's opinion fails to 'state with sufficient particularity and clarity'" its reasons for denying relief, and proceeding to vacate the BIA's order and remand the case (quoting Gailius v. INS, 147 F.3d 34, 46 (1st Cir. 1998))). The BIA's March 7, 2025, order, in case number 25-1340, and the June 4, 2025, order, in case number 25-1544, are **vacated** and the case is **remanded** to the BIA for consideration consistent with this decision.